IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CAROLE J. BLANCHER, | ) | Civil No.: 6:14-cv-01860-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

       Drew L. Johnson
       Drew L. Johnson, P.C.
       1700 Valley River Drive
       Eugene, OR 97405

       Kathryn Tassinari
       Harder Wells Baron & Manning, PC
       474 Willamette Street, Suite 200
       Eugene, OR 97401

             Attorneys for Plaintiff

       Billy J. Williams, Acting U.S. Attorney
       Janice Hebert, Asst. U.S. Attorney
       1000 S.W. 3rd Avenue, Suite 600
       Portland, OR 97204

FINDINGS AND RECOMMENDATION – 1

Jordan Goddard
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

      Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff Carole Blancher brings this action pursuant to 42 U.S.C. §405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her application for Disability Income Benefits (DIB) under the Social Security Act (the

Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the

Agency) for an award of benefits. In the alternative, Plaintiff seeks a remand for further

proceedings.

For the reasons set out below, the Commissioner's decision should be reversed and this

action should be remanded for an award of benefits.

## **Procedural Background**

Plaintiff filed an application for a period of disability and for DIB on October 10, 2010

alleging she had been disabled since June 18, 2010.

After her claims were denied initially and upon reconsideration, Plaintiff timely requested

an administrative hearing.

On June 11, 2013, a hearing was held before Administrative Law Judge (ALJ) John

Michaelsen. Plaintiff and Mark McGowan, a Vocational Expert (VE), testified at the hearing.

Plaintiff was represented by counsel.

FINDINGS AND RECOMMENDATION – 2

In a decision dated July 17, 2013, ALJ Michaelsen found that Plaintiff was not disabled within the meaning of the Act.

On September 23, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1966 and was 47 years old at the time the ALJ issued his decision. She graduated from high school and received a certificate in cosmetology. Although Plaintiff worked as a recess coordinator and a paid care coordinator for a family member, the ALJ found that these jobs did not qualify as past relevant work.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform

jobs that exist in significant numbers in the national economy.  Id.

### Medical Record and Testimony

The court has carefully reviewed the medical record and testimony and the parties are familiar with both. Accordingly, the details of that evidence will be set out below only as they are relevant to the issues before the court.

### ALJ's Decision

As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2015.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability on June 18, 2010.

At the second step, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis (MS) and obesity.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P, App. 1.

The ALJ next assessed Plaintiff's residual functional capacity. He found that Plaintiff retained the capacity to perform sedentary work but was further limited to no more than occasional crawling, balancing, or climbing; and should avoid concentrated exposure to extreme temperatures, humidity, moving machinery, heights or "similar hazards." Tr. 16-17. In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.

At the fourth step of his disability analysis, the ALJ found that Plaintiff had no past relevant work.

At the fifth step, the ALJ found that Plaintiff retained the functional capacity required to perform jobs that existed in significant numbers in the national economy. Based upon the VE's testimony, the ALJ cited telephone solicitor, ticket seller, and information clerk as examples of work Plaintiff could perform. Based upon the conclusion that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

### **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

**Discussion**

Plaintiff contends that the ALJ improperly rejected her testimony; failed to give legally sufficient reasons for rejecting the opinions of her treating neurologist, Dr. Balm and her treating therapist, Jackie Hudson; improperly rejected lay witness evidence; failed to include Plaintiff's lumbar radiculopathy, anxiety and depression at Steps Two and Four of the sequential analysis; and failed to meet her burden of proving that Plaintiff retains the capacity to perform "other work" in the national economy.

## I. Plaintiff's Subjective Symptom Testimony[1]

Plaintiff contends that the ALJ failed to articulate a clear and convincing reason, supported by substantial evidence, for rejecting her statements concerning the extent and severity of her impairments.

## A. Standards

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted).   An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's

---

[1] The Social Security Administration recently rescinded Social Security Ruling ("SSR") 96-7P, "Policy Interpretation Ruling Titles II and XVI Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements." SSR 16-3P, available at 2016 WL 1119029, at *1.The Administration noted the use of the term "credibility" was not consistent with its regulations, and further clarified "subjective symptom evaluation is not an examination of the individual's character." Id. Pursuant to SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. Id. The ALJ's evaluation of Plaintiff's testimony, here, failed to meet either the SSR 96-7P or SSR 16-3P standard.

complaints. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir.1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

 In addition, an ALJ must consider the entire record and consider several factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; medications taken and their effectiveness; treatment other than medication; measures other than treatment used to relieve pain or other symptoms; and "other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." C.F.R. §404.1529(c).

## B.  Analysis

 In support of his credibility determination, the ALJ cited evidence that Plaintiff had testified to symptoms that were inconsistent with a treatment record that showed she was capable of performing limited sedentary work and had engaged in activities of daily living that were inconsistent with her contemporary reports of her actual functioning. Because there was no evidence of malingering, the ALJ was required to provide clear and convincing reasons for supporting his finding that Plaintiff's testimony was not wholly credible.

 The reasons supporting the ALJ's credibility determination do not meet that standard. The ALJ's assertion that Plaintiff's subjective symptom testimony was inconsistent with the medical evidence is not supported by the record. The ALJ, while noting Plaintiff's "chronic fatigue," asserted her examinations did not show any significant neurological limitations other than stiffness in her legs and gait. He thus concluded that the medical evidence showed that

Plaintiff was "still capable of performing limited sedentary level activity despite her condition." Tr. 19.

The Commissioner contends that Plaintiff's treating neurologist, Dr. Balm, described Plaintiff's condition as "stable" and that the ALJ noted she exhibited only mild spasticity in her legs and gait. Def. Brief at 7, Tr. 17-19. The Commissioner argues that Plaintiff has "failed to explain how these mild objective findings in her lower extremities would prevent her from performing *sedentary* work," and that these mild neurological deficits were a relevant factor for the ALJ to consider when evaluating Plaintiff's subjective symptom testimony. Def. Brief at 7(emphasis in the original).

The Commissioner's argument is unavailing. At the hearing, Plaintiff testified that she cannot work because of debilitating fatigue. Tr. 38, 59. She testified that she naps for two hours almost every day and that she gets very sleepy and "nods off" even when she is doing nothing during the day except watching television. Tr. 58-59. Plaintiff repeatedly reported excessive fatigue to her medical providers. Tr. 42, 209, 306, 360, 401, 410, 413,424, 451, 494, 508. Lay witness evidence corroborated that significant fatigue was a pronounced aspect of her symptomology. Tr. 238-246. Where, as here, medical evidence establishes the existence of an impairment reasonably expected to produce some symptoms, an ALJ cannot reject a claimant's testimony on the grounds that the degree of symptoms alleged is not fully supported by objective medical evidence. E.g., Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986). The ALJ's reliance on what he characterized as mild neurological deficits as a basis for discounting Plaintiff's testimony regarding debilitating fatigue was, therefore, in error.

Plaintiff also contends that the ALJ's evaluation oversimplified and isolated evidence that indicated she remained "upbeat" or "in good spirits," continued to work, and had normal

sensation and reflexes. Tr. 18, Pl. Brief at 12-13. Plaintiff correctly notes that the record

demonstrates that while Plaintiff made an effort to remain positive as she adjusted to her

diagnosis and subsequent symptomology, she struggled with and was treated for depression and

anxiety. Tr. 309, 387, 393, 396, 425. The record clearly does not support a finding that Plaintiff's

complaints were inconsistent with the medical evidence.

       Plaintiff also notes that although the ALJ cited Dr. Balm's January 2013 treatment record

as demonstrating that Plaintiff continued to work, had normal sensation and reflexes, and

"stable" MS, that same treatment note also indicated that Plaintiff reported anxiety, back and

neck pain, loss of coordination and balance, muscle weakness and headaches. Tr. 430.  Three

months later, Plaintiff reported a decline in her mobility and functional status. She reported

significant fatigue and spasticity. Dr. Balm noted a moderately spastic gait and 4/5 weakness of

the hip flexors and hamstrings. He opined that she exhibited "slowly progressive myelopathic

symptoms, without discrete exacerbation." Tr. 511. An MRI performed on December 13, 2012

showed lesions on Plaintiff's cervical spine consistent with chronic plaques of demyelination[2], as

well as multilevel disc bulges and protrusions/extrusions "resulting in mild to moderate canal

stenoses with mass effect upon the ventral cord also seen at the C4-5 and C5-6 levels." Tr. 421.

       The ALJ's finding that claimant's complaints were inconsistent with the objective

medical evidence is not supported by the record and does not provide a clear and convincing

reason for rejecting Plaintiff's testimony.

       The ALJ also found that Plaintiff's subjective symptom testimony was less than fully

credible because he concluded that her activities of daily living were inconsistent with her

---

[2] Demyelination is damage to the protective covering (myelin sheath) that surrounds nerve fibers in your brain and spinal cord. See "Demyelinating disease: What causes it?" The Mayo Clinic (available at http://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/expert-answers/demyelinating-disease/faq-20058521).

allegations that she could not sustain sedentary work. Tr. 19. The ALJ noted that Plaintiff was

the "designated driver" for her teenage daughter, cared for her family, helped care for family pets

and assisted with chores, spent two to three hours on the computer daily, socialized with friends,

enjoyed hobbies and continued to work as a hairdresser. Tr. 19-20. The Commissioner contends

that Plaintiff's "under the table work as a hairdresser throughout the alleged period of disability"

is valid support for the ALJ's determination that she could maintain less demanding work. Def.

Brief at 4, Tr. 20. She argues that Plaintiff's activities must be considered in combination and

that Plaintiff was able to perform many activities during her day, albeit from a seated position.

The Commissioner argues that Plaintiff's daily activities do not need to be the equivalent of full-

time work to serve as a basis for discrediting her claims of a totally debilitating impairment.

Plaintiff argues that none of the activities cited by the ALJ conflict with her testimony that she

could not perform even sedentary work on a full-time basis because of fatigue and back pain.

Plaintiff's argument is persuasive. The record supports her contention that she performs

activities such as household chores for short periods of time throughout the day and with

frequent and lengthy breaks in between activities. Tr. 42-43, 52-53, 186, 187, 209. She is able to

drive her daughter for short periods of time but testified she must do so "in a rested state." Tr. 46,

51. Plaintiff performs a number of activities from a seated position; however, as noted above,

chores are performed in brief intervals with periods of rest. In addition, Plaintiff testified she can

sit for only about two hours before her back pain causes her to have to lie down. Tr. 44. Also, as

noted, Plaintiff testified that she has needed to nap for two hours each afternoon. Tr. 58.

The Commissioner makes much of what she characterizes as Plaintiff's "under the table

work" as a hairdresser. Def. Brief at 4, 5, 10, 12, 15, 17. Citing Drouin v. Sullivan, 966 F2d

1255, 1258 (9th Cir. 1992), the Commissioner argues that this work activity supports the ALJ's

disability determination. I disagree. Lay witness statements indicate that Plaintiff cut hair for some of her personal friends. Tr. 240, 244-245. These lay witnesses commented that Plaintiff could no longer perform two haircuts without taking a break, had to sit down for part of the time and had, on one occasion, needed to cancel a friend's haircut due to her fatigue. Id. The ALJ did not address this activity during the hearing and found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that she had no past relevant work. Tr. 15, 22.

In Drouin, the ALJ discounted the claimant's allegations of pain in part because she had worked during her alleged period of disability but had not lost her past two jobs because of pain. The claimant had worked for six months for a fast-food restaurant. She usually worked four hours a day, five days a week and occasionally worked an eight-hour shift. She alleged that she quit due to mental and physical exhaustion. Prior to that she had worked for almost a year at a photo film processing lab but was laid off. Id. at 1256. In finding that there was substantial evidence supporting the ALJ's decision, the Drouin Court noted that the claimant had been able to hold "two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands of less strenuous jobs." Id. The Drouin Court did not hold, as the Commissioner seems to suggest, that the claimant's work activity, in and of itself, was a clear and convincing reason to discredit her testimony.

The Commissioner must evaluate a claimant's "ability to work on a sustained basis." 20 C.F.R. §404.1512(a); Lester v. Chater, 81 F.3d. 821, 833 (9th Cir. 1995). A claimant need not be utterly incapacitated and even the "sporadic ability to work" is not inconsistent with disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Lester, 81 F.3d at 833. Here, the record does not support the conclusion that Plaintiff's activities of daily living, including the haircuts she

FINDINGS AND RECOMMENDATION – 12

provided for friends, were inconsistent with her allegations that fatigue and back pain precluded her from performing even sedentary work on a sustained basis.

Here, the ALJ failed to provide clear and convincing reasons for his adverse credibility finding. This was not harmless legal error and, accordingly, the action should be remanded.

## II. <u>Evaluating Medical Opinion</u>

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of fact-finder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir.1992).

Because treating physicians have a "greater opportunity to know and observe" their patients, their opinions are given greater weight than the opinions of other physicians. <u>Smolen</u>, 80 F.3d at 1285. An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions, <u>Lester</u>, 81 F.3d at 830–31; and must provide "specific, legitimate reasons ... based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir.1989)(citations omitted).

## A. Dr. Balm

As noted above, Plaintiff contends the ALJ improperly rejected the opinions of her treating neurologist, Dr. Michael Balm.

Dr. Balm's treatment notes begin on March 3, 2010. On that date, Plaintiff's muscle strength, bulk and tone were notable for 2+ spasticity in the left leg and 1+ in the right leg. Tr. 362. Dr. Balm noted that a December 2009 MRI of Plaintiff's brain displayed "a single 3mm

enhancing lesion, with otherwise moderate MS lesion burden." He confirmed earlier diagnoses of relapsing, remitting MS, initiated Rebif treatment and referred Plaintiff to physical therapy. Tr. 363.

During an office visit on June 21, 2010, Plaintiff reported neurogenic bladder symptoms with urgency, occasional bowel incontinence and difficulty emptying her bladder. She reported persistent fatigue and mild balance difficulty. Dr. Balm noted that Plaintiff had chronic depression and anxiety. On exam, Plaintiff demonstrated normal strength, bulk and tone in her arms and legs. Dr. Balm opined that Plaintiff's "stamina and ability to perform physically demanding work that requires prolonged standing will be compromised by her MS" and that she "would find it difficult to work in her current capacity." Tr. 359

In notes of a visit dated December 15, 2010, Dr. Balm noted that Plaintiff's muscle strength, bulk and tone were notable for 2+ spasticity in both legs; she had a mildly spastic gait and exhibited new right facial symptoms that suggested the possibility of a small brainstem acute MS lesion.  Sensation to light touch and vibration were normal in both arms and legs. Dr. Balm noted that Plaintiff remained ambulatory "and in good spirits." Tr. 353-354.

During an office visit on June 8, 2011, Plaintiff reported chronic midline upper lumbar pain that she felt limited her walking and activity. There had been no change to her neurogenic bladder symptoms. Plaintiff reported trouble sleeping and continued chronic fatigue. Dr. Balm opined that Plaintiff's neurogenic bladder and spastic gait disorder were probably aggravating her chronic back pain and "her overall sense of decreased endurance that has been slowly progressive." Tr. 348. He noted, "I do think she is experiencing a mild degree of secondary progressive symptoms." Id.

FINDINGS AND RECOMMENDATION – 14

During an office visit on December 7, 2011, Plaintiff reported trouble sleeping, unusual fatigue and a slow, gradual increase in imbalance. Dr. Balm noted that Plaintiff's muscle strength, bulk and tone were notable for 2+ spasticity in both legs and her gait was mildly spastic. He opined that Plaintiff "represents a high degree of complexity, with significant risk of morbidity."Tr. 389.

In treatment notes dated April 17, 2013, Dr. Balm noted that Plaintiff remained ambulatory but was using a walking stick "most of the time" and was experiencing "significant fatigue and spasticity."Tr. 508. He noted that she had "slowly progressive myelopathic symptoms, without discrete exacerbation" despite Rebif therapy. Tr. 511. Dr. Balm opined that Plaintiff was "permanently disabled at this point by her progressive neurologic decline. She is not having discrete exacerbations but is having slowly progressive increasing disability as documented by history and exam." Id.

The ALJ asserted that Dr. Balm's opinions were entitled to little weight because despite "repeated opportunities to examine the claimant and form an opinion, he fails to provide an assessment of her functioning level." Tr. 20 He also found that Plaintiff's activities of daily living undermined the doctor's opinion that she was unable to tolerate work activity and his opinion regarding her permanent disability was a finding reserved for the Commissioner. Id.

The Commissioner argues that the ALJ properly rejected Dr. Balm's opinion because it was brief, conclusory and inadequately supported by clinical findings. She argues that all neurological examinations prior to April 2013 documented mild neurological deficits limited to Plaintiff's legs and that Dr. Balm, himself, "expressly acknowledged a lack of clinical findings." Def. Brief at 9 citing Tr. 359. However, a thorough review of the record reveals that Dr. Balm's opinions are consistent with both his own treatment notes and the findings of other providers.

See Orn v. Astrue, 495 F.3d 625, 634 (9th Cir. 2007)(record as a whole, including medical test results, laboratory findings and reports from other health care providers was sufficient support for physician's opinion). In June 2010, at the beginning of her alleged onset, Dr. Balm did note that he discussed with Plaintiff the "lack of specific neurologic deficits demonstrable on exam." Tr. 359. However, in addition to clinical findings that documented increased spasticity and mobility issues, Dr. Balm's notes reflect Plaintiff's reports of and treatment for her chronic fatigue and back pain. When viewed in its entirety, the record demonstrates that Dr. Balm's assessment was based on his interpretation of his exam findings and his multiple interactions with Plaintiff as her treating neurologist.

Inconsistency with Plaintiff's activities was also not a legally sufficient reason for rejecting Dr. Balm's opinion. As discussed above in the context of Plaintiff's credibility, her ability to perform certain activities on an intermittent basis, combined with the need to rest and to change from a sitting to lying down position are not consistent with the ability to perform sedentary work on a sustained basis. As such, Plaintiff's activities are not inconsistent with Dr. Balm's opinions regarding her ability to work and are thus not a legally sufficient reason for failing to credit those opinions.

The Commissioner next argues that the ALJ properly rejected Dr. Balm's opinions regarding Plaintiff's ability to work because this is a finding reserved for the Commissioner. The ALJ is certainly correct that the ultimate issue of disability is reserved for the Commissioner. However, although "the administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability . . . he cannot reject them without presenting clear and convincing reasons for doing so." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)(citations omitted). This is especially true when, as in this case, the opinion is

provided by a treating source of many years with specialized training. See Holohan v. Massanari,
246 F.3d 1195, 12021203 (9th Cir. 2001) (citations omitted)(more weight afforded to the
opinions of specialists concerning matters relating to their specialty and treating physician's
opinion on disability, even if controverted, can be rejected only with specific and legitimate
reasons supported by substantial evidence in the record). Thus, the fact Dr. Balm rendered what
could be characterized as an opinion on the ultimate issue of disability dictates only that the ALJ
was not bound by that opinion, it did not relieve the ALJ of the obligation to state legally
sufficient reasons for rejecting it.

I have already concluded that this action should be remanded due to harmful error in the
evaluation of Plaintiff's subjective symptom testimony. I also conclude that the ALJ erred in
rejecting Dr. Balm's opinion and that such error also warrants a recommendation to remand.

**B. Ms. Hudson**

Plaintiff's mental health therapist, Ms. Jackie Hudson, opined that it would not be
possible for Plaintiff to work full-time, as she lacked the physical capacity or emotional stamina
to do so. Plaintiff argues that the ALJ failed to properly consider Ms. Hudson's opinion.

Although Ms. Hudson is not an acceptable medical source and is an "other medical"
source, evidence from "other medical" sources can demonstrate "the severity of the individual's
impairment(s) and how it affects the individual's ability to function." 20 C.F.R. §404-1513(d);
SSR 06-03p, available at 2006 WL 2329939. ALJs must consider opinions from "other" sources,
and must provide a "germane reason" for their rejection. Turner v. Commissioner of Social
Security, 613 F.3d 1217, 1224 (9th Cir.2010).

The ALJ supported his rejection of Ms. Hudson's opinion by asserting it was inconsistent
with Plaintiff's daily activities and the medical record did not support a finding that Plaintiff has

any severe mental impairments. He also rejected her opinion because she "largely followed the claimant for depression and anxiety, so her opinion regarding the claimant's physical limitations carries little weight." Tr. 21

For the same reasons discussed with regard to the ALJ's assessment of Plaintiff's credibility and Dr. Balm's opinion, I conclude that Plaintiff's activities of daily living were not a germane reason for rejecting Ms. Hudson's opinion. Likewise, although the ALJ concluded that Plaintiff did not have any severe mental impairments, the record does support the conclusion that she struggled with significant anxiety and depression. Tr. 309, 387, 393, 396, 493-495, 425, 504-507. The record, therefore, is not inconsistent with Ms. Hudson's opinion that Plaintiff lacked the "emotional stamina" to work full-time.

Nevertheless, Ms. Hudson's lack of medical expertise was a proper basis for discounting her opinion. Although I agree with Plaintiff that Ms. Hudson's personal observations of Plaintiff's physical challenges were valid lay witness evidence, I also agree that these observations neither refute a determination that Plaintiff cannot perform sedentary work nor are they sufficient to support a medical conclusion that Plaintiff lacks the physical stamina to work full-time. Thus, despite offering two legally insufficient reasons, the ALJ did offer a single germane reason for rejecting Ms. Hudson's opinion. Accordingly, I conclude there was no error.

### III. Lay Witness Evidence

Eight lay witnesses, including Plaintiff's husband, submitted letters describing their observations of Plaintiff's limitations. Plaintiff contends the ALJ did not provide legally sufficient reasons for disregarding this evidence. Lay witness testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. Nguyen v. Chater, 100 F3d 1462, 1467 (9th Cir. 1996)(citations

omitted). The ALJ must provide "reasons germane to each witness" in order to reject such

testimony. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)(citations omitted).  Here, the ALJ

summarized the lay witness statements then wrote:

> The undersigned has carefully considered the lay witness statements by the
> claimant's family and friends. However, these statements do not convince the
> undersigned that the residual functional capacity is less limiting than warranted by
> the evidence discussed in this decision. Although the claimant's family and
> friends have understandably expressed their concern over the claimant's
> condition, their statements regarding the claimant's perceived limitations are not
> completely consistent with the medical evidence of record.

Tr. 22.

The ALJ's treatment of the lay witness statements was improper for at least two reasons.

First, his blanket assessment addressing all lay witness evidence together fails to meet the

requirement that he support his rejection of lay witness evidence with reasons "germane to *each*

witness." Lewis, 236 F.3d at 511(emphasis added).  Furthermore, an ALJ may not reject a lay

witness's subjective report merely because it is not corroborated by objective medical evidence.

Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir.2009); see also SSR 96-7p, available at 1996 WL

374186 (1996)("allegations concerning the intensity and persistence of pain or other symptoms

may not be disregarded solely because they are not substantiated by objective medical

evidence"). In addition, the Commissioner's argument that "it is not clear how [the lay witness

statements] contradict the ALJ's finding that Plaintiff could perform sedentary work," is

unavailing. Def. Brief at 13. Plaintiff's husband wrote that Plaintiff needed frequent naps to

recover from any level of exertion. Tr. 242. Plaintiff's mother-in-law wrote that Plaintiff spent

most of her time lying down and her fatigue had steadily worsened. Tr. 239. Other friends and

family noted Plaintiff's significant fatigue and its interference with her daily activities. Tr. 240-

241, 244, 246.

FINDINGS AND RECOMMENDATION – 19

The ALJ here improperly discounted lay witness statements and this error further supports a recommendation for remand.

## IV. __Remand__

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir.1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).

In determining whether an award of benefits is warranted the court follows the "three-part credit-as-true standard." Garrison v. Colvin, 759 F3d 995, 1020 (9th Cir. 2014). Under this standard the court considers whether: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant's testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Id. (citing Ryan v. Comm'r Soc. Sec., 528 F.3d 1194, 1202 (9th Cir. 2008))

On the first factor, there is no need to further develop the record. See Garrison, 759 F.3d at 1021 (citing Benecke v. Barnhart, 379 F.3d 587, 595(9th Cir. 2004)) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")). On the second factor, the court has concluded that the ALJ failed to provide legally sufficient reasons that are supported by substantial evidence in the record for rejecting Dr. Balm's opinions and failed to provide legally sufficient reasons for rejecting Plaintiff's subjective complaints. On the third factor, if the

FINDINGS AND RECOMMENDATION – 20

discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled

on remand because the vocational expert testified that a person with the limitations that Dr. Balm

identified and to which Plaintiff testified, would be incapable of sustained full-time work. Tr. 65-

67.

      If a court concludes, as in this case, that a Plaintiff meets the three criteria of the credit-

as-true standard, the improperly discredited evidence is credited as true and remand for an award

of benefits is appropriate unless "the record as a whole creates serious doubt as to whether the

claimant is, in fact, disabled with the meaning of the Social Security Act." Garrison, 759 F.3d at

1020-1021) (citations omitted).

      Considering the record as a whole, I conclude that there is no reason for serious doubt as

to whether Plaintiff is disabled. On the record before the Court, Dr. Balm's opinions and

Plaintiff's subjective complaints should be credited as true and the case should be remanded for

an award of benefits.[3]

### Conclusion

      For the reasons set out above, a judgment should be entered REVERSING the

Commissioner's decision and REMANDING this action to the Agency for an award of benefits.

### Scheduling Order

      This Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due September 19, 2016.  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

---

[3] Plaintiff also contends and provides cursory argument that the ALJ erred in failing to include her lumbar radiculopathy, depression and anxiety at Steps two and four of the sequential analysis and erred in concluding that Plaintiff retained the capacity to perform "other work" in the national economy. Because I have concluded that this action should be remanded for an award of benefits for other reasons I need not and do not address those issues here.

FINDINGS AND RECOMMENDATION – 21

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of September, 2016.


_/s/ John Jelderks_____
John Jelderks
U.S. Magistrate Judge